IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACACIA RESEARCH GROUP, LLC, and | ) | Civ. No. 17-1144-RGA |
| LIFEPORT SCIENCES, LLC, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

In February 2017, petitioner Boston Scientific Corporation and respondents Acacia Research Group, LLC and Lifeport Sciences, LLC (collectively, "Acacia") engaged in a contractually mandated arbitration, after which the arbitration panel issued an award in favor of Acacia. Currently pending before the court are cross-motions by the parties, whereby Boston Scientific has moved to vacate the final arbitration award, and Acacia has moved to confirm the final arbitration award. (D.I. 4; D.I. 16). The court has jurisdiction over this matter pursuant to 9 U.S.C. § 9. For the reasons stated herein, Boston Scientific's motion is denied and Acacia's motion is granted.

**I. BACKGROUND**

**A. The Demand for Arbitration**

On September 26, 2012, Acacia and Boston Scientific entered into an agreement (the "Assignment Agreement"), under which Boston Scientific assigned all rights, title, and interest in certain patents to Acacia. (D.I. 6-1, Ex. 1 at § 1.1). In exchange, Acacia agreed to pay Boston Scientific $8 million upfront and a royalty in the future. (*Id.* at §§ 3.1 & 3.2). The royalty is

1

calculated as a share of any "Net Proceeds" derived from enforcement of the patents. (*Id.* at § 3.2). The Assignment Agreement is "governed by and construed under applicable federal law and the laws of the State of Delaware, excluding any conflict of law provisions." (*Id.* at § 7.2).

Section 7.1 of the Assignment Agreement requires any dispute between the parties, not resolved by mediation, to be submitted to binding arbitration, initiated and conducted in accordance with the AAA Commercial Arbitration Rules. (*Id.* at § 7.1). The arbitration must be "before a panel of three (3) arbitrators experienced in intellectual property contracts and issues and selected in accordance with the rules set forth below." (*Id.*). "To select the arbitrators, the Parties will request a list of ten (10) neutral arbitrators from the AAA." (*Id.*). "Each Party will then rank the arbitrators and the three arbitrators with the highest ranking will serve as the panel." (*Id.*).

After the Assignment Agreement was executed, Acacia assigned a subset of the patents to its wholly-owned subsidiary, Lifeport Sciences, LLC. (D.I. 6-1, Ex. 19 at 1). Lifeport then sued Cook Corporation for infringement. (*Id.* at 6). In response, Cook informed Acacia that several of the asserted patents were subject to a covenant not to sue for which Cook had previously paid Boston Scientific $20 million (the "Cook Covenant"). (*Id.*). In the Assignment Agreement between Acacia and Boston Scientific, Boston Scientific had represented and warranted that, with an exception not applicable here, "the Patents are not subject to a covenant not to sue." (D.I. 6-1, Ex. 1 at § 4.1.5). After confirming that the Cook Covenant existed, Lifeport dismissed the action against Cook, and Acacia sought to recover damages from Boston Scientific for making a false representation and warranty. (*Id.*, Ex. 19 at 6-7). When the parties could not resolve their dispute, Acacia demanded arbitration. (*Id.*, Ex. 2).

## B. The Selection of Arbitrators

Pursuant to Section 7.1 of the Assignment Agreement, the AAA provided the parties with a list of ten potential arbitrators. (D.I. 6-1, Ex. 5). On December 2, 2015, Boston Scientific asked the AAA for more candidates because it was "unable to identify any experience in 'intellectual property contracts and issues'" for five of the ten candidates, including two of the candidates who were ultimately appointed to the panel—William F. Carroll, Esq. and Mark A. Shank, Esq. (*Id.*, Ex. 7). That same day, the AAA denied Boston Scientific's request, stating: "The AAA provided a list of arbitrators who listed Intellectual Property experience in their arbitration resume. We trust they have the experience listed." (D.I. 18-1, Ex. A).

On December 4, 2015, Boston Scientific objected to the list of names "as violating Section 7.1 of the parties' Assignment Agreement, which requires each arbitrator to possess 'experience[] in intellectual property contracts and issues.'" (D.I. 6-1, Ex. 11). On December 17, 2015, the AAA appointed as arbitrators Mr. Carroll, Mr. Shank, and George Bowles, Esq., and asked each of them to "provide a note about how or why they meet the qualifications needed for this case." (*Id.*, Exs. 12 & 15). Mr. Shank provided a note stating:

> I have been counsel in patent case[s], copyright, trademark cases, trade secret and breach of confidentiality cases. [I] [h]ave served as counsel in several software cases involving IP issues. Almost all of these cases involve contracts of some type or another involving or protecting IP.

(D.I. 18-1, Ex. B).

On December 24, 2015, Boston Scientific again objected to the appointment of Mr. Shank, stating:

> Mr. Shank does not appear to have any background or experience in "intellectual property contracts or issues." Specifically, based on a review of Mr. Shank's experience over the past 10 years, available via Westlaw, his name appears as counsel on only one patent case since 2005 (and, when reviewing that case, Mr. Shank is listed, not as counsel of record, but as "movant" counsel on a peripheral issue).

3

(D.I. 6-1, Ex. 13). Acacia responded on December 28, 2015, arguing, "Patents constitute just one facet of intellectual property, and narrowing the requirement as Boston Scientific advocates would re-write the parties' Agreement." (*Id.*, Ex. 14).

The AAA submitted Boston Scientific's objection and Acacia's response to its Administrative Review Council (the "Council"). (*Id.*, Ex. 15). The Council reaffirmed Mr. Shank as an arbitrator. (*Id.*, Ex. 17). As the Council explained, Boston Scientific asked that Mr. Shank be disqualified based on his purported lack of relevant experience, but under the AAA's rules an arbitrator may only be disqualified for "partiality or lack of independence, inability or refusal to perform his or her duties with diligence and in good faith, and any grounds for disqualification provided by applicable law." (*Id.*).

### C. The Arbitration

The arbitration hearing was held in Fort Worth, Texas from February 20, 2017 to February 23, 2017. (D.I. 6-1, Ex. 19 at 1). On May 12, 2017, the panel issued its Memorandum Opinion and Award, finding for Acacia and awarding $3,470,440.96 in damages, interest, fees and costs. (*Id.* at 35). The Panel concluded: "It is clear based on the evidence that Boston Scientific had knowledge of the Cook Covenant," which "establishe[d] a breach of the representation and warranty in Section 4.1.5 of the Agreement." (*Id.* at 15).

### II. DISCUSSION

The Federal Arbitration Act (the "FAA") gives courts an "extremely limited" role in reviewing arbitration awards. *Sheet Metal Workers v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir.1988). An application to confirm an award must be granted so long as (1) the application is brought in the court specified by the parties, if one is specified; (2) "at any time within one year after the award is made"; and (3) the award is not "vacated, modified, or corrected

4

as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. "It is irrelevant whether the courts agree with the arbitrator's application and interpretation of the agreement." *Roberts & Schaefer Co. v. Local 1846, United Mine Workers*, 812 F.2d 883, 885 (3d Cir. 1987) (quoting *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982)). Here, the parties specified that "entry of judgment with respect to the decision of the arbitrators" shall be decided in "any Delaware state or federal court." (D.I. 6, Ex. 1 at § 7.2). Acacia's Motion to Confirm was brought within one year of the award. (D.I. 6-1, Ex. 19; D.I. 16). Thus, the dispute before the court is whether the award should be confirmed for the reasons presented by Acacia or vacated for the reasons argued by Boston Scientific.

Acacia argues that the court cannot reach the substance of Boston Scientific's motion, because it was not timely under the deadline prescribed by the FAA.[1] (D.I. 17 at 10). "A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award." *Kelly v. MBNA Am. Bank*, 2007 WL 1830892, at *4 (D. Del. June 25, 2007) (quoting *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007)). Under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The arbitration panel emailed the award to the parties on May 15, 2017. (*Id.*, Ex. G). Then, Boston Scientific sent a copy of the motion to vacate to Acacia by e-mail on August 15, 2017 and by FedEx the next day, August 16, 2017. (D.I. 23-1, Ex. 1; D.I. 18-1 Ex. I). Nevertheless, the court need not determine if (1) service by email constitutes valid service under 9 U.S.C. § 12, or (2) service on August 16, 2017 was within the

---

[1] Acacia initially argued that the motion to vacate was also untimely under the Delaware Uniform Arbitration Act, but abandoned this argument in its reply. (D.I. 17 at 9-10; D.I. 22 at 2; D.I. 27 at 4 n. 4).

5

time allowed. Even if service was timely, Boston Scientific has not shown that the arbitral award should be vacated.

An arbitral award may be vacated only for the reasons enumerated in Sections 10 and 11 of the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). BSC's Motion is brought under subsection 10(a)(4), which provides that an award may be vacated "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); D.I. 4. Specifically, BSC argues that Mr. Shank did not meet the qualifications set forth in Section 7.1 of the Assignment Agreement and, therefore, the panel had no power to resolve the parties' dispute and enter the Award under review. (D.I. 5 at 9).

"[A]rbitration is a matter of contract." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "The power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." *eCast Settlement Corp. v. Matthews-Orr*, 2008 WL 2386172, at *5 (D.N.J. June 9, 2008) (quoting *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991)). "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5. "Arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." *eCast*, 2008 WL 2386172, at *5.

Here, the Assignment Agreement required that each of the three arbitrators be "experienced in intellectual property contracts and issues." (D.I. 6, Ex. 1 at § 7.1). There are two notable points regarding this clause. First, the Assignment Agreement does not indicate how much experience or what kind of experience, only that the arbitrator has "experience." In other words, the Assignment Agreement did not require "significant" experience, or that the experience be litigation

6

experience, as Boston Scientific suggests. (*See* D.I. 22 at 10-12). Second, the term "intellectual property" is not limited to patent law as Boston Scientific suggests. (*See, e.g., Id.* at 11 (stating that there is no indication that Mr. Shank has experience in "litigation or arbitration of patent infringement claims")). Instead, "intellectual property" means: "A category of intangible rights protecting commercially valuable products of the human intellect. The category comprises primarily trademark, copyright and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition." Black's Law Dictionary (14th ed. 2014). Thus, under the terms of the Assignment Agreement as written, Mr. Shank was qualified to serve as an arbitrator, because he has experience in "intellectual property contracts and issues."

Mr. Shank was first admitted to the bar in 1979 and, as of the date of his appointment to the panel, had been practicing law for approximately thirty-seven years. (D.I. 6, Ex. 6). Mr. Shank's resume states that he has "substantive experience" in "intellectual property" and "trade secrets." (*Id.*). His law firm website biography lists litigation experience including "matters involving claims of theft, trade secrets and intellectual property." (D.I. 18-1, Ex. J). When asked by the AAA to provide his qualifications, Mr. Shank stated that he had been counsel in "patent case[s], copyright, trademark cases, trade secret and breach of confidentiality cases," and "served as counsel in several software cases involving IP issues." (D.I. 6, Ex. 16). Finally, a search of publicly available information shows that Mr. Shank was counsel in *Schnee-Morehead, Inc. v. Parr Technologies, LLC*, No. 3-07-CV-1809-M (N.D. Tex.) (a misappropriation of trade secrets case involving the intellectual property of a manufacturer of adhesive sealant products); and *Jericho Systems Corp. v. Booz Allen Hamilton Inc.*, No. 3:07-cv-2009-L (N.D. Tex.) (a case involving misappropriation of the plaintiff's software). (D.I. 17 at 18; D.I. 22 at 12-13). Both cases were filed in 2007. Boston Scientific may find wanting Mr. Shank's role in those cases, but

as stated previously, it did not bargain for a certain quality or quantity of experience. Given the foregoing, Mr. Shank satisfied the Assignment Agreement's requirement that he have experience in "intellectual property contracts and issues." As a result, the panel did not exceed its powers in rendering the final arbitration award.

## III. CONCLUSION

For the foregoing reasons, Boston Scientific's motion to vacate the final arbitration award (D.I. 4) is denied, and Acacia's motion to confirm the final arbitration award (D.I. 16) is granted. An appropriate order will be entered.

Dated: June 25, 2018

*Richard G. Andrews*
UNITED STATES DISTRICT JUDGE